UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———————————————

KATRINA REED,

       Plaintiff,

v.                                           Case No. 2:16-CV-34

BRIAN JONES and RODNEY JONES,           HON. GORDON J. QUIST

       Defendants.

_____/

**OPINION REGARDING PLAINTIFF'S AND DEFENDANTS'
CROSS-MOTIONS FOR SUMMARY JUDGMENT**

The parties raise the issue of whether Plaintiff, Katrina Reed, a citizen and resident of Canada, is entitled to recover damages for personal injuries arising from an automobile accident in Michigan's Upper Peninsula with a vehicle driven by Defendant, Brian Jones, and owned by his father, Rodney Jones. Michigan has a "no-fault" automobile insurance statute which can provide many benefits to insureds, but which can also prevent recovery through ordinary litigation in court. M.C.L. § 500.3135. The question presented by the parties' cross-motions for summary judgment is whether Ms. Reed has presented sufficient evidence so that she can present her case to a jury.

**NON-ECONOMIC LOSS**

The first issue is whether Ms. Reed can recover damages for non-economic loss. A tortfeasor remains liable under Michigan's No-Fault Act for non-economic loss caused by negligent use of a motor vehicle if the injured person suffered "death, serious impairment of body function, or permanent serious disfigurement." M.C.L. § 500.3135(1). A plaintiff seeking to establish that she suffered a serious impairment of body function must demonstrate "(1) an objectively manifested impairment… (2) of an important body function… that (3) affects the person's general ability to lead

his or her normal life." *McCormick v. Carrier*, 487 Mich. 180, 215, 795 N.W.2d 517, 537 (2010).

"[T]he court should determine whether there is a factual dispute regarding the nature and extent of

the person's injuries, and, if so, whether the dispute is material to determining whether the serious

impairment of body function is met." *Id.* (citing M.C.L. § 500.3135(2)(a)(I) and (ii)).  This test is

treated as a question of law for the court only "[i]f there is no factual dispute[] or no material factual

dispute." *Id*.

To be "objectively manifested," the impairment must be "evidenced by actual symptoms or

conditions that someone other than the injured person would observe or perceive as impairing a

body function." *McCormick*, 487 Mich. at 196, 795 N.W.2d 517 at 527.  There must also be a

causal link between the injury and the accident.  *See Mehdi v. Gardner*, No. 319630, 2015 WL

1227710, at *2 (Mich. Ct. App. Mar. 17, 2015).  This prong cannot be satisfied by a plaintiff's

testimony regarding pain and suffering alone; there must be a physical basis to support the

subjective complaints of pain and suffering, which generally requires medical testimony.

*McCormick*, 487 Mich. at 198, 795 N.W.2d 517.

Plaintiff claimed in her June 27, 2016 deposition to have the following symptoms:

- Plaintiff is unable to perform various physical activities that she was able to before the accident, including kickboxing, biking, weight lifting, step and spin classes, yoga and Pilates.

- Plaintiff lost strength and flexibility.

- Plaintiff struggles with housework.

- Plaintiff has discomfort after sitting or standing for extended periods of time and walks with a limp.

(ECF No. 44-1 at PageID.344-62.)  However, these are subjective symptoms.  The sole evidence Ms.

Reed presented as evidence of objective symptoms to show an objectively manifested impairment

is the affidavit of Dr. Michael Nenonen, a Canadian chiropractor, who said Ms. Reed:

> - Has a limited and painful range of motion in her neck, left hip, and left elbow.
>
> - Has various symptoms of pain and discomfort that prevent Plaintiff from carrying on strenuous physical activity.

(ECF No. 43-2 at PageID.286-87.)  There is some question about when Plaintiff actually began seeing Dr. Nenonen for treatment of injuries sustained in the accident.  Dr. Nenonen's affidavit, dated September 14, 2016, indicates that he had been treating Plaintiff "for over three years."  (ECF No. 43-2 at PageID.286.)  Plaintiff indicated in her June 27, 2016 deposition that she began seeing Dr. Nenonen about eight months after the accident, and had been getting treatment for the past two years.  (ECF No. 45-1 at PageID.342-44.)  Documents obtained by Defendants during discovery indicate that Plaintiff began treatment with Dr. Nenonen on February 4, 2015.  (ECF No. 46-5 at PageID.408-09.)

But this affidavit falls short of an objective manifestation.  Courts look for an x-ray, MRI, or similar test that reveals an injury.  *See, e.g., Lopez-Garcia v. United States*, No. 15-11374,2016 WL 4917566, at *5 (E.D. Mich. Sept. 15, 2016) (reported restricted range of motion in injured joints three weeks after accident failed to establish objective manifestation when "a CT scan of [the plaintiff's] lumbar spine immediately following the accident was deemed 'normal', and a follow-up MRI conducted months later showed no signs of 'acute fracture.'"); *Mehdi*, 2015 WL 1227710, at *2 (plaintiff failed to establish objective manifestation where the "only documented manifestations of plaintiff's injuries directly attributable to the accident were subjective symptoms of neck and back pain, headaches, and a diagnosis of whiplash" within days of the accident); *cf. O'Chel v. Kitchen*, No. 13-13845, 2014 WL 2207081, at *4 (E.D. Mich. May 27, 2014) (finding objective manifestation where x-rays taken two days after accident did not show any spinal injuries, but MRIs taken five months later revealed "bulging discs, and annular tears in [the plaintiff's] lumbar region, as well as

a slight broad-based disc bulge in her neck"); *Stapleton v. Auto Club Ins. Ass'n*, No. 317701, 2014 WL 7214680, at \*5 (Mich. Ct. App. Dec. 18, 2014) (finding objective manifestation where plaintiff's x-ray results immediately after the accident were considered "normal," but plaintiff also provided MRI results indicating disc bulges in the spine in addition to reports of restricted range of motion).

Defendants are entitled to summary judgment on Plaintiff's claim for non-economic damages.

## ECONOMIC LOSS

Work loss damages consist of income which the injured party injured party "would have received *but for* the accident." *Hannay v. Dep't of Transp.*, 497 Mich. 45, 80–81, 860 N.W.2d 67, 88 (2014) (emphasis in original) (quoting *MacDonald v. State Farm Mut. Ins. Co.*, 419 Mich. 146, 152, 350 N.W.2d 233, 235 (1984)) (internal quotation marks omitted).  Any "work loss in excess of the daily, monthly, and 3-year limitations contained in" M.C.L. § 500.3107 is recoverable under M.C.L. § 500.3135.  *Id.* at 76, 860 N.W.2d at 86.  By contrast, "loss-of-earning-capacity damages are wages a person 'could' have earned but for the accident."  *Id* at 81, 860 N.W.2d at 88. Loss of earning capacity is not recoverable under the no-fault act.  *Ouellette v. Kenealy*, 424 Mich. 83, 87–88; 378 NW2d 470, 472 (1985).

Defendants argue that Plaintiff's economic damages allegations amount to unrecoverable loss-of-earning-capacity claims.  (ECF No. 46 at PageID.367.)[1]

As an initial matter, Plaintiff fails to cite anything in the record that supports her claims regarding the exact amount of money she was or is paid.  (ECF No. 42 at PageID.229-30.)  In the

---

[1]Defendants did not raise this in their opening brief, reasonably believing that Plaintiff was not seeking economic damages based on Plaintiff's deposition.  Plaintiffs were afforded an opportunity to respond at oral argument after Defendants raised their view in their reply brief.

amended complaint and her brief, Plaintiff alleges that she was making $21.95 per hour at Davey Home and $16.00 per hour at We Care, and that she now makes $25.20 per hour at Extendicare. (ECF No. 10 at PageID.50; ECF No. 42 at PageID.230.)   Neither document references her employment at Road to Recovery.  In her deposition Plaintiff discussed the number of hours worked at these various jobs, but did not mention anything about specific hourly wages.  (ECF No. 44-1 at PageID.318-325.)   What is more, Plaintiff actually testified that she makes more money at Extendicare Maple View than she was making at We Care.  (*Id.* at PageID.323.)

Plaintiff also asserts that she lost both of her pre-accident part-time jobs because of physical limitations caused by her injuries.  (ECF No. 42 at PageID.230.)   Defendant points out that Plaintiff's deposition contradicts this account of events.  Plaintiff testified that she lost her job at We Care because she was unable to get to work after the crash destroyed her car (ECF No. 44-1 at PageID.319-320), and that she left her job at Davey Home because she preferred the hours offered at Extendicare Maple View.  (*Id.* at PageID.324.)  Plaintiff directly stated that she was not claiming that she now makes less money because of the accident. (*Id.* at PageID.325.)

Even setting aside the fact that Plaintiff has offered no proof as to wages, Defendants are entitled to summary judgment.  Plaintiff worked part time at two jobs before the accident, We Care and Davey Home.  After the accident, she took two weeks off from both jobs.  Plaintiff then lost her job at We Care because the accident totaled her car.  Plaintiff was hired by Extendicare Maple View a few weeks later, and testified that Extendicare pays her more than the job at We Care.  She thus has no real *loss* that extends beyond the three-year limit in the no-fault statute.  Plaintiff also testified that she left her job at Davey Home because she preferred the work schedule at Extendicare Maple View.  The accident was thus not a but-for cause of whatever work loss could be associated with her leaving Davey Home.

Defendants are entitled to summary judgment on Plaintiff's claims for economic damages.

## **CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment,

deny Plaintiff's motion for summary judgment and dismiss the case.

A separate order will enter.


Dated:  November 22, 2016                                   /s/ Gordon J. Quist
                                                        GORDON J. QUIST
                                                UNITED STATES DISTRICT JUDGE